**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Alletta S. Brenner**, OSB No. 142844
Abrenner@perkinscoie.com
**Daniel Keese**, OSB No. 140989
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiff
Rentrak Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RENTRAK CORPORATION, a professional corporation <br><br> Plaintiff, <br><br> v. <br><br> SIMON BURTON, an individual, JOEL HEDRICK, an individual, VISTA GROUP INTERNATIONAL LIMITED, a limited liability company, and NUMERO LIMITED, a limited liability company <br><br> Defendants. | No. 3:15-cv-458 <br><br> By Plaintiff Rentrak Corporation <br><br> COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL <br><br> (Breach of Contract; Trade Secret Misappropriation; Tortious Interference With Economic Relations; Breach of Fiduciary Duty and the Common Law Duty of Loyalty; Breach of the Implied Covenant of Good Faith and Fair Dealing; Computer Fraud; and Violation of the Stored Communications Act.) |

Plaintiff Rentrak Corporation ("Rentrak" or "Plaintiff"), by and through its undersigned

counsel, brings this Complaint against Defendants Simon Burton, Joel Hedrick, Vista Group

1-    COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF AND DEMAND FOR JURY TRIAL

International Limited (dba Vista Entertainment Solutions), and Numero Limited (collectively, "Defendants"), and alleges as follows:

## NATURE OF DISPUTE

1.    Rentrak seeks damages and injunctive relief against Defendants for theft of Rentrak's confidential, proprietary and trade secret information, the misuse of such information, and the destruction of Rentrak assets in an attempt to hide their course of conduct.  With the aid and encouragement of Defendant Vista Group International Limited, Defendants Burton and Hedrick, while still employed by Rentrak, engaged in a scheme to clandestinely steal Rentrak's intellectual property and to use it to develop their own competing venture, now operating as Numero Limited.  This conduct, which blatantly violated Defendant Burton and Hedrick's contractual and fiduciary duties to Rentrak, amounts to knowing and willful misappropriation of Rentrak's confidential, proprietary, and trade secret information.  In the course of this scheme, Defendants Burton and Hedrick not only breached their duties to Rentrak, but misused their positions within the company and the confidential information they gained to maliciously interfere with Rentrak's contractual relationships and to do harm to Rentrak.  Defendants continue to injure Rentrak today through the use of the confidential, proprietary, and trade secret information they stole from Rentrak.  This ongoing and injurious course of conduct entitles Rentrak to damages and an injunction against one or more Defendants for:  (a) breach of contract; (b) trade secret misappropriation; (c) tortious interference with economic relations; (d) breach of fiduciary duty and the common law duty of loyalty; (e) breach of the implied covenant of good faith and fair dealing; (f) computer fraud; and (g) violation of the Stored Communications Act.

## PARTIES, JURISDICTION AND VENUE

2.    Plaintiff Rentrak Corporation ("Rentrak") is an Oregon corporation with its corporate headquarters located at 7700 NE Ambassador Place, Portland, Oregon 97220.  Rentrak

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

operates globally in 36 countries and has offices in 10 countries, including the United States and Australia.

3.      Upon information and belief, Defendants Simon Burton and Joel Hedrick are citizens of Australia, residing in the vicinity of Sydney, Australia.

4.      Defendant Vista Group International Limited, formerly Vista Entertainment Solutions Limited and doing business as Vista Entertainment Solutions, ("Vista") is a New Zealand limited liability company, headquartered in Auckland, New Zealand.

5.      Defendant Numero Limited ("Numero") is a New Zealand limited liability company, headquartered in Sydney, Australia.

6.      This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and all Defendants, and the amount in controversy exceeds the jurisdictional amount.  Plaintiff is a corporation organized under the laws of the State of Oregon.  Defendants Burton and Hedrick are foreign citizens and residents of Australia.  Defendant Vista is a New Zealand limited liability company with its global headquarters located in New Zealand.  Defendant Numero is a New Zealand limited liability company with its headquarters in Australia.  The total value of the injunctive relief and damages sought by Plaintiff exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendant Burton because he entered into an employment contract with Rentrak, an Oregon company, and because Burton's actions in connection with his employment gave rise to the claims alleged herein.

8.      Further, this Court has personal jurisdiction over Burton by consent, as his employment contract with Rentrak contains a forum-selection clause whereby Burton agreed that any related suit or action shall be instituted and commenced exclusively in courts located in the State of Oregon.

3-   COMPLAINT FOR DAMAGES AND INJUNCTIVE
      RELIEF AND DEMAND FOR JURY TRIAL

74182.0023/LEGAL125256289.6

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

9.      This Court has personal jurisdiction over Defendant Hedrick because he entered into an employment contract with Rentrak and Hedrick's actions in connection with this employment gave rise to the claims alleged herein.

10.     This Court also has personal jurisdiction over Hedrick because, as described below, Hedrick deliberately and tortiously interfered with the employment contract of another Rentrak employee, Simon Burton.  Hedrick knew or had reason to know that Burton was bound by an employment contract with Rentrak, that his actions were likely to cause Burton to violate this contract, that Rentrak was located in Oregon and that his actions would cause actual injury and harm to Rentrak in Oregon.

11.     This Court has personal jurisdiction over Defendants Vista and Numero because, as described below, these Defendants' deliberate actions were the cause of Defendants Burton and Hedrick's breach of their contracts with Rentrak, resulting in actual injury in Oregon.  Upon information and belief, Defendants Vista and Numero knew or had reason to know that Burton and Hedrick were bound by these contracts, that their actions were likely to cause Burton and Hedrick to violate the terms of these contracts, that Rentrak was located in Oregon, and that the actual injury and harm from Vista's tortious interference would be felt in Oregon.

12.     Venue is proper in the United States District Court for the District of Oregon for Plaintiff's claims against Defendants Burton and Hedrick pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein arose in this District and for Plaintiff's claims against Defendants Vista and Numero pursuant to 28 U.S.C. § 1391(c)(2) because there is personal jurisdiction over Vista and Numero in this district.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## FACTS

### A.    Rentrak and Vista

13.    Rentrak is the world's leading provider of audience measurement and analytics services to the movie, television, and advertising industries.  Rentrak operates in 36 countries, measuring viewing behavior on over 100,000 movie screens in excess of 20,000 theaters, 31 million televisions, and all of the major multi-channel video programming distributors.  With more than 20 years of experience in tracking audience behavior, Rentrak is the leading provider of business intelligence on consumer behavior in the entertainment industry.

14.    Vista Group International Limited, doing business as Vista Entertainment Solutions, provides technologies for scheduling, pricing, seating, theater configuration, and promotions and discounts.  Vista provides its customers with software, support, and other services.  Vista is headquartered in New Zealand but it operates in 63 countries around the world, including the United States.

15.    Numero Limited, provides an "aggregated box office reporting platform" that collects information from movie theater box offices and then uses this data to create and deliver customized reports on box office returns to film studios, distributors and cinemas.  Numero is an Australian-based company that was incorporated in New Zealand by Vista executive Brian Cadzow and in which Vista holds a controlling majority ownership interest.  Vista lists Numero on its website as one of the businesses in the "Vista Group."

### B.    Rentrak's Development of Propriety Information and Trade Secrets

16.    Based on years of investment and experience in the industry, Rentrak has created proprietary and confidential systems and business processes for gathering and reporting data related to audience measurement and analytics.  Rentrak has invested years of effort and millions of dollars in developing its proprietary and confidential systems and methods, including its data file specifications.  Rentrak has further strengthened its proprietary systems through the strategic

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

acquisition of complementary structures, such as Rentrak's acquisition of Nielsen EDI in January 2010.

17.    With respect to the film industry, Rentrak serves an important role for its many customers.  Rentrak acts as a conduit and clearinghouse for the vast amount of data that Rentrak processes into is proprietary databases containing information that its customers (movie production companies and distributors) want to know about the performance of various films on screens spread around the world.

18.    In order to provide this important service, Rentrak has developed a number of proprietary systems.  For instance, Rentrak's Box Office Essentials and International Box Office Essentials systems uses proprietary systems and protocols to enable exhibitors to accumulate data from the films showing on their screens and then provide this data to Rentrak.  As part of International Box Office Essentials, Rentrak has developed a specification, called "eGro"/"Ebor", which provides information to each theater on how to report the data it accumulates back to Rentrak.

19.    Rentrak's "eGro"/"Ebor" specification includes proprietary XML tags to identify particular types of data in the files that exhibitors use to report their box office receipts.  Also included within the specification is information garnered through years of industry experience on how to report various types of box office data, for example problematic "edge cases."

20.    After exhibitors send Rentrak information consistent with these specified protocols, Rentrak applies its proprietary data file specifications, business processes, and software to this data.  Rentrak processes and analyzes the vast amount of data assembled to provide detailed information on audience behavior across media distribution platforms, providing the industry's most accurate and detailed view of entertainment consumption intelligence.  Rentrak provides this information to its clients, also known as subscribers, so they are able to optimize their programming and advertising revenue by sending more targeted messages to consumers.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

21.     Rentrak's business model is based on the use of confidential and proprietary information and know-how, including its data file specifications. Rentrak has a competitive edge in the industry by virtue of its ability to provide the highest-quality intelligence available on audience behavior. This competitive edge is only possible because Rentrak has developed its own unique and proprietary systems and processes for gathering, measuring, analyzing, processing, and reporting audience data.

22.     Rentrak's confidential information and trade secrets include: (a) computer software and programs; (b) database technologies, systems, structures and architectures, and specifications; and (c) processes, formulae, and compositions, such as the coding systems, analytical processes and the performance metrics Rentrak uses to collect and develop detailed information about consumer behavior across media platforms.

23.     In addition to its proprietary systems and processes for collecting and analyzing audience behavior, Rentrak enjoys a competitive advantage due to the depth of confidential consumer data it possesses, which it obtained and developed using proprietary systems and processes. Other trade secrets upon which Rentrak relies on for its competitive edge include its confidential pricing strategies and business plans, policies, and methods.

24.     Rentrak takes extensive steps to protect its confidential information and trade secrets, including its data file specifications, from disclosure. Rentrak's internal policies include stringent confidentiality and data security requirements. Rentrak marks sensitive documents as confidential, including, but not limited to, its "eGro"/"Ebor" data specification. Access to protected information is limited to only those employees who have a specific need for it. For example, Rentrak's data file specifications are stored on a password-protected drive and only provided to exhibitors upon specific request by the sales team. Employees with access to such information are required to sign agreements prohibiting them from disclosing or using Rentrak's confidential information without authorization. Rentrak provides access to its products, such as the International Box Office Essentials system, including its "eGro"/"Ebor" data file

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

specification, only after exhibitors agree to protect the confidentiality of the specification(s) pursuant to non-disclosure agreements. Rentrak has also obtained copyright protection for several of its data specifications and other confidential documents.

25.     Similarly, Rentrak takes extensive measures to protect its confidential pricing information. This pricing information, which is negotiated individually with each of Rentrak's subscribers, is neither publically shared nor available. Rentrak does not maintain a list of prices for its services. Individualized prices are established only after negotiations with each subscriber. Rentrak maintains the confidentiality of its pricing and contracts information and prohibits the disclosure of the pricing information by its employees.

**C.    Simon Burton's Role at Rentrak and His Binding Employment Obligations**

26.     Burton joined Rentrak as part of Rentrak's acquisition of Nielsen EDI in 2010. When he joined Rentrak, the company made Burton a Managing Director of Rentrak International. His title later changed to Vice President of Rentrak International in Rentrak's Theatrical International Division.

27.     In 2012, Rentrak sponsored Burton for an L-1 Visa to allow him to remain in the United States to serve as a Vice President of Rentrak International. The basis for Burton's Visa was that he would provide Rentrak with services essential to its operations in the United States, including identifying, developing, and directing the implementation of Rentrak's short and long-term business objectives. In this role, Burton was tasked with acting as the key contact for international business transactions with major studio clients, identifying global markets for expanding Rentrak's market share, and directing and supervising the activities of Rentrak's regional vice-presidents and country general managers.

28.     Because Burton, in this role, would be exposed to Rentrak's confidential information and trade secrets, Rentrak conditioned his employment on Burton entering into a written contract with Rentrak entitled "Employee Confidentiality and Noncompetition Agreement" (the "Agreement"), attached hereto as Exhibit A. Among other duties and

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

responsibilities, the Agreement contains specific provisions regarding non-disclosure, non-solicitation, non-competition, and protection of Rentrak's trade secrets and confidential information.

29.     Under the Agreement, "Confidential Information" is defined as:

> (i) any trade secrets and proprietary information…; (ii) information marked or designated by the Company as confidential; (iii) information, whether or not in written form and whether or not designated as confidential, which is known to me as being treated by the Company as confidential…;(iv) information provided to the Company by third parties which the Company is obligated to keep confidential.  (Exh. A, ¶ 1.)

Specifically, the Agreement provides that protected Confidential Information includes: "plans, policies, corporate developments, products, services, methods of doing business, procedures, suppliers, and customers, that is competitively sensitive and not generally available to the public," as well as "specifications, techniques, data…, processes."

30.     The Agreement protects against the disclosure and misuse of Rentrak's Confidential Information through covenants of non-use and non-disclosure, which state in relevant part:

> I agree that I will not, during the period of my employment by the Company or thereafter, directly or indirectly copy, reproduce, summarize, quote or make any commercial or other use whatsoever of any Confidential Information, except as may be necessary to perform my duties for the Company… (¶ 5.)

> I agree that I will hold all Confidential Information in a fiduciary capacity and will not, during the period of my employment by the Company or thereafter, reveal, communicate or disclose Confidential Information, directly or indirectly, under any circumstances or by any means, to any third person without the prior express written consent of the Company. (¶ 4.)

31.     The Agreement further protects against the disclosure of Confidential Information through non-competition and non-solicitation provisions:

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> During the period of my employment and for twenty-four months (24) thereafter, I will not: (a) directly or indirectly…engage in any business involving the wholesale distribution of home video cassettes or is otherwise engaged in a business that is substantially similar to and/or competes with any of the businesses then engaged in by the Company or its affiliates;…(c) induce or attempt to induce, any person who is in the employment of the Company to leave such employment and engage in any activity described in Section 9(a); (d) solicit any entities or persons who are at the time of termination of my employment customers of the Company or its affiliates; and (e) engage in any of the activities enumerated in clauses (a) - (d) of this section anywhere in the United States or in any other geographical area where the Company conducts its business or sells or distributes its products or services.  (¶ 9.2.)

32.    The Agreement also acknowledges that the Confidential Information that Burton would obtain as a result of his position is "special and unique" and that a "breach of any of the terms and covenants of this Agreement will result in irreparable and continuing harm to the Company for which there will be no adequate remedy at law."  (¶ 11.)  Therefore, Burton agreed that "the Company shall be entitled to temporary or permanent injunctive relief and/or an order of specific performance enforcing this Agreement, and to judgment for damages caused by [its] breach, and any other remedies provided by applicable law."  (Id.)

33.    Additionally, Burton acknowledged receipt of, and agreed to abide by, Rentrak's Employee Handbook.  Rentrak's Employee Handbook specifically references the Agreement.

34.    As Vice President of Rentrak International, Burton was responsible for interacting directly with Rentrak's subscribers in the entertainment industry and managing the International Division's budgets across its international offices.  In addition, Burton handled contracts and personnel issues and was responsible for business development in new markets.

35.    In his various roles and positions, Burton necessarily had access to Rentrak's trade secrets and other confidential information, including:  subscriber lists, financial and budget information, pricing strategies, data file specifications, and business processes.  As part of his duties, Burton had access to, and provided confidential information to, both exhibitors and

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

subscribers, including Rentrak's International Box Office Essentials system and "eGro"/"Ebor" data file specifications.

36.     While employed by Rentrak, Burton resided in the United States and worked directly with other executives who were based at Rentrak's Portland, Oregon headquarters. Burton regularly exchanged emails and phone calls with Oregon-based Rentrak executives and personnel.  In addition, he traveled regularly to Oregon several times a year to attend meetings with other members of Rentrak's executive board and to review company financials and strategy.

**D.     Joel Hedrick's Role at Rentrak and His Binding Employment Obligations**

37.     Hedrick also joined Rentrak through its acquisition of Nielsen EDI in 2010. Hedrick initially served as the Managing Director of Rentrak's Sydney Australia office, but he was promoted on March 29, 2012, to a dual role in which he retained his Managing Director responsibilities while also serving as the Vice President – Asia Pacific of Rentrak's Theatrical International Division.

38.     When first hired by Nielson, Hedrick agreed to an "Employee Confidentiality and Proprietary Rights Agreement," (the "Hedrick Agreement") attached hereto as Exhibit B.  This Agreement contains specific provisions that obligated Hedrick to maintain Nielson's, and later Rentrak's, confidential information and trade secrets.  The Hedrick Agreement acknowledges Hedrick's obligation not to misuse confidential information:

> I recognise the confidential nature of the company's work and I shall not at any time disclose to anyone, make use of or copy (except to the extent such disclosure, use or copying is necessary for the proper performance of my duties as an employee of the Company and is authorised by the Company) any information with respect to the procedures, clientele or results or findings of the Company with respect to any client's or customer's affairs. (¶ 1.)

39.     The Hedrick Agreement further requires an employee leaving the Company to return any records, files or documents relating to the business, plans, methods, procedures, or results and also not to disclose any confidential information.  (¶ 4.)  The Hedrick Agreement

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

further prevents inducing other employees to leave the Company and prevents interference with

the Company's relationship with its customers, clients, employees or suppliers:

> In the event that I leave employment with the Company for any
> reason, I agree that:
>
> a) I will return to the Company any records, files, notebooks,
> correspondence or other papers or documents relating to the
> business, plans, methods, procedures, clientele or results or
> findings of the Company which may be in my possession and will
> not retain any of such papers or documents or copies of any
> thereof.
>
> b) I will not disclose to anyone any information with respect to the
> business, plans, methods, procedures or employees of the
> Company or of any customer or client of the Company obtained in
> the course of my employment with the Company.
>
> c) I will not disclose the names of the Company's customers or
> clients, current or prospective, to anyone.
>
> d) For a period of two years following the termination of my
> employment with the Company for any reason, I will not induce,
> or assist in the inducement of, any employee of the Company to
> leave his or her employment.
>
> e) I will not interfere with the relationship between the Company
> and its customers, clients, employees or suppliers.  (¶ 4.)

40.     In addition, Hedrick also agreed to and signed Rentrak's Code of Business

Conduct ("Rentrak Code of Conduct"), attached hereto as Exhibit C, which also specifies certain

duties and obligations, including that employees must: "avoid any activity or personal interest

that creates or appears to create a conflict between your interests and the interests of the

Company," which specifically includes "any activity that is intended to or that you should

reasonably expect to advance a competitor's interests" and prohibits "market[ing] products in

competition with the Company's current or potential business activities."  (Exh. C at p. 2-3.)

41.     In addition, the Rentrak Code of Conduct requires that employees must "respect

and protect the confidentiality of all such [proprietary] information, whether belonging to

12- COMPLAINT FOR DAMAGES AND INJUNCTIVE
     RELIEF AND DEMAND FOR JURY TRIAL

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Rentrak or others with which Rentrak does business, and not to use that information for personal advantage."  (Id. at 6.)

42.    The Rentrak Code of Conduct expressly applies to all employees, officers and directors, and every employee, officer and director is required to read and sign the acknowledgement agreeing to abide by the Code of Conduct.  Upon information and belief, Burton also agreed to abide by the Rentrak Code of Conduct.

43.    Due to his position as a Managing Director and Vice President in the Theatrical International Division, and in the positions that he held prior to that, Hedrick necessarily had access to Rentrak's confidential information and trade secrets, including:  customer lists, financial and budget information, pricing strategies, data file specifications, and business processes.  Hedrick had access to confidential information, and as part of his duties, he provided confidential information, including Rentrak's International Box Office Essentials system and "eGro"/"Ebor" data file specifications, to Rentrak's partners.

44.    While employed by Rentrak, Hedrick resided worked directly with other executives who were based at Rentrak's Portland, Oregon headquarters.  Hedrick regularly exchanged emails and phone calls with Oregon-based Rentrak executives and personnel. Hedrick also traveled to Oregon as part of his employment with Rentrak.

**E.    While Employed at Rentrak, Burton and Hedrick Appropriate Trade Secrets and Form a Competing Business**

45.    On May 18, 2013, Burton gave abrupt notice that he was leaving his position as Vice President of International Business after approximately three and a half years with Rentrak, and approximately ten years before that as an employee at Nielsen EDI, where he served in a series of executive positions.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

46.     Prior to providing notice, however, and while still living in the United States on the temporary L-1A Visa sponsored by Rentrak, Burton engaged in a clandestine effort to appropriate Rentrak's trade secrets, form a competing business, and solicit Rentrak's employees.

47.     After almost three and a half years as a Rentrak employee, and shortly after Burton's departure, Hedrick gave Rentrak notice that he too would be leaving the company. Concerned about the potential disruption in its Asia Pacific operations if both Hedrick and Burton left simultaneously, Rentrak requested that Hedrick remain with Rentrak during a transition period, until August 2013.  Hedrick accepted a significant bonus in the form of a doubled salary as part of agreeing to remain at Rentrak through the transition period.  Rentrak had no idea at the time that they retained Hedrick that he had been working to create a competing company while he was still employed by Rentrak.

48.     While still employed by Rentrak, Burton and Hedrick secretly engaged in extensive negotiations with third-parties, including at least one high-level executive at Vista, regarding the development of a competing business to Rentrak that Vista would partner with and for which it would provide financial support.  Burton and Hedrick created and distributed a series of documents in order to pitch the creation of a new company, which they initially called "Vi-Box," targeting one or more Rentrak customers in an attempt to steal that business.  Notably, in documents where Burton and Hedrick discussed their perceptions of Rentrak's strengths and weaknesses, they discussed competing with Rentrak.  They noted as an initial risk that their target "[c]lients already have existing deals in place with Rentrak."  These documents further contain direct reference to Burton and/or Hedrick's intent to "[u]tilize existing client relationships to meet with" exhibitors and subscribers.

49.     From at least January 2013 onwards, Burton and Hedrick pitched their proposed venture to executives at Rentrak's competitors and other executives in the film industry.  For instance, Burton and Hedrick had numerous discussions with Kirk Senior, who currently serves as the Chairman of the Board at Vista.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

50.    Upon information and belief, while they were still employees of Rentrak and bound to act in a fiduciary capacity as such, Burton and Hedrick also communicated with Rentrak's clients regarding potential support for a new competing venture.  For example, by January 2013, Burton had begun to engage in clandestine discussions with Brett Rosengarten, a high-level executive at Village Roadshow, Ltd., regarding whether that executive and/or Village Roadshow would financially support the development of the new competing venture.

51.    At the time Burton and Hedrick were engaged in these clandestine negotiations with Vista, Kirk Senior, Brett Rosengarten, and/or other persons or entities, they remained employees of Rentrak with full access to Rentrak's confidential information and trade secrets.

52.    During their employment at Rentrak, Burton and Hedrick used Rentrak's confidential information and trade secrets to help develop and pitch their new business venture, including but not limited to, using confidential market and financial data such as Rentrak's proprietary rate-card/pricing model, to create proposed budgets and extrapolate expected revenues in order to obtain investor funding.

53.    While still employed by Rentrak, Burton and/or Hedrick had access to Rentrak's proprietary and confidential International Box Office Essentials system, including but not limited to, the "eGro"/"Ebor" data file specification.  In fact, Burton had a copy of the "eGro"/"Ebor" specification on his Rentrak laptop.

54.    On information and belief, while still employed at Rentrak, Burton and Hedrick conspired to misappropriate and use Rentrak's confidential and proprietary information, including, but not limited to, confidential and proprietary data file specifications, *e.g.* the "eGro"/"Ebor" data file specification in order to jump-start their competing venture.

55.    Indeed, as Burton finalized his plans for his new competitive venture, he referenced "eGro" and "non-eGro" exhibitors in relation to how his new venture would approach the market, demonstrating that Burton intended to implement elements of Rentrak's International

15-  COMPLAINT FOR DAMAGES AND INJUNCTIVE
     RELIEF AND DEMAND FOR JURY TRIAL

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Box Office Essentials system, including the "eGro"/"Ebor" specification to collect electronic gross data from "eGro," as opposed to "non-eGro" exhibitors.

56.    In addition to the disclosure and misuse of Rentrak's confidential information and trade secrets, Burton also sought to undermine Rentrak through the solicitation of other Rentrak employees to join him in the venture, including Hedrick.

57.    As a result of Burton's aid and encouragement, Hedrick did in fact breach his contractual obligations to Rentrak by misusing and disclosing confidential information and trade secrets, and through his subsequent participation in Numero, seeking to directly compete with Rentrak.

58.    Upon information and belief, prior to leaving their positions with Rentrak, Burton and Hedrick also sought to solicit fellow Rentrak employee, David Lee, to leave and join their competing business, and sought to orchestrate his departure to maximize harm to Rentrak in order to weaken its ability to combat Burton, Hedrick, and Vista's unfair competition.

59.    On May15, 2013, Burton copied data from his company laptop onto a USB removable thumb-drive.  Upon information and belief, these files contained confidential information and trade secrets of Rentrak, including data file specifications (such as its proprietary "eGro"/"Ebor" specification), and business processes, such as rules and coding systems.

60.    In addition, in May 2013, shortly before leaving Rentrak, Burton spoke to Thomas Radtke-Sweetser, another Rentrak employee, about his knowledge of Rentrak's email and archival systems.

61.    At the time of his departure, Burton was concerned that he would leave traces of his plans to steal confidential information and form a competing business.  Burton specifically inquired regarding whether email files that he deleted from his company email account would be "gone for good."

16-  COMPLAINT FOR DAMAGES AND INJUNCTIVE
     RELIEF AND DEMAND FOR JURY TRIAL

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

62.     On May 18, 2013, Burton's last day at Rentrak, he attempted to delete approximately 300 files from his company-owned laptop and numerous other files from his company email account. Burton, however, never sought nor received permission to delete any files from his laptop or email account. On information and belief, Burton attempted to delete these files to hide or dispose of evidence in anticipation of litigation.

**F.     Burton and Hedrick Go to Work at Vista**

63.     Rentrak subsequently learned that Burton, and later Hedrick, were working with Vista to form and operate a new venture, Numero Limited. Numero operates an aggregated box office reporting platform that uses data collected from movie theaters to create and deliver customized reports on box office returns to film studios, distributors and cinemas.

64.     Upon information and belief, since 2014 Burton and Hedrick have been working for Numero. Since October 2014, Burton has been serving as one of Numero's directors. Upon information and belief, Burton also serves as its Chief Executive Officer. Since October 2014, Hedrick has been serving as a director for Numero and is also an employee of the company.

65.     Upon information and belief, Burton and Hedrick have stolen, misused, and continue to misuse Rentrak's confidential information and trade secrets obtained during the course of their employment—including, but not limited to, Rentrak's data file specifications and information about pricing strategies and contract terms—to help develop Numero's aggregated box office reporting platform business and to harm Rentrak.

66.     In Burton and Hedrick's business plan for "Vi-Box," which, upon information and belief was the roadmap for what became Numero, it is stated that the architecture of the new company's data collection and analytics system would be developed and functional in a matter of months using less than a handful of developers for a cost of $320,000. In this plan, only 1-3 months is allocated for building a "reporting framework" with no time specifically allocated for the creation of data file specification(s), even though such a specification would be an essential component any collection of data from exhibitors. Upon information and belief, it would not be

17-  COMPLAINT FOR DAMAGES AND INJUNCTIVE
     RELIEF AND DEMAND FOR JURY TRIAL

74182.0023/LEGAL125256289.6

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

possible for "Vi-Box" or any other new venture to engineer a data file specification(s) on its own within such a tight timeframe at such a low cost.

67.    On information and belief, Burton, Hedrick, Vista, and/or Numero have continued to use and disclose Rentrak's confidential and proprietary information, including, but not limited to, elements of Rentrak's International Box Office Essentials system, including confidential and proprietary data file specifications, in their operation of one or more competitive ventures. Though it took Rentrak decades to develop its data file specifications, Numero was formed, publically launched, and has now begun collecting audience behavioral data from exhibitors in a period of less than 18 months.  Upon information and belief, Numero could not have engineered its own data file specification(s) and audience behavior analytics system on its own in such a short time without the use of Rentrak's confidential, proprietary and trade secret information.

68.    In addition, Burton has utilized and shared insider intelligence gleaned from private meetings with Rentrak clients wherein Burton represented Rentrak, to develop Numero and undermine Rentrak.  For example, Burton has used confidential pricing information gained in the course of his employment with Rentrak to attempt to interfere with Rentrak's relationship with existing clients.  Upon information and belief, Burton attempted to interfere with Rentrak's relationship with one large American movie studio client by stating incorrectly that it was receiving the worst price of any Rentrak subscriber.

69.    On information and belief, Burton, Hedrick, and Vista have stolen and are using Rentrak's confidential and proprietary pricing information, including its proprietary rate-card/pricing model to gain an unfair competitive advantage in forming and developing Numero to compete with Rentrak.

70.    On information and belief, Burton, Hedrick, Vista, and/or Numero continue to use Rentrak's confidential and proprietary pricing information to unfairly compete against Rentrak in the markets where Numero operates.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

71.     Upon information and belief, Numero is seeking to directly compete with Rentrak by providing audience measurement and analytics services to customers in regions and markets where Rentrak operates, specifically in the Asia-Pacific region, including New Zealand and Australia.  On information and belief three Australian movie theaters plan to begin reporting at least a portion of their box-office data exclusively to Numero.  These three theaters have stopped reporting complete data to Rentrak already.  Because the quality of the audience behavior analytics that Rentrak provides depends on the comprehensiveness of the data it collects, even a partial reduction in the audience behavior data that exhibitors report to Rentrak is harmful to its business.  Upon information and belief, Numero is actively seeking to enter into exclusive reporting deals with other exhibitors in the Australian market and Rentrak's loss of complete data reporting by these additional theaters  is imminent.

72.     Upon information and belief, Numero is also planning and actively seeking to enter the market for media consumption analytics in the United States and to begin competing directly against Rentrak in the United States.

**G.     Tortious Acts of Vista**

73.     During their employment at Rentrak, Burton and Hedrick were actively seeking financial and business partners to support and facilitate the development of a new venture to compete with Rentrak.

74.     By January 2013, Burton and Hedrick were in communication with Kirk Senior, the Executive Chairman of Vista, regarding the development of a new venture to compete with Rentrak.  Upon information and belief, through numerous phone calls, emails, and in-person meetings, Kirk Senior confidentially solicited and encouraged Burton and Hedrick to leave Rentrak and work with Vista to help develop Numero as a competitor to Rentrak in the Asia-Pacific region and eventually, the United States.

75.     Upon information and belief, Kirk Senior and Vista knew or had reason to know that at the time of these communications, Burton and Hedrick were bound by their contractual

19-  COMPLAINT FOR DAMAGES AND INJUNCTIVE
     RELIEF AND DEMAND FOR JURY TRIAL

74182.0023/LEGAL125256289.6

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

obligations to Rentrak and that they were breaching these obligations by misusing Rentrak's confidential information and trade secrets to plan and develop a competing venture.

76.     Despite Vista's knowledge and/or inquiry notice that Burton and Hedrick were bound by contractual obligations to Rentrak and that their actions for Vista's benefit—including but not limited to disclosing Rentrak's confidential and proprietary information, soliciting Rentrak's subscribers and exhibitors, and developing a competing venture—would violate these obligations, Vista nonetheless moved ahead with the formation of Numero and the hiring of Burton and Hedrick.

77.     In 2014, Rentrak learned that Burton was working for Vista and that Burton may have been doing so in violation of the terms of the Agreement.  In April 2014, legal counsel for Rentrak notified Vista of the terms of Burton's employment contract, including the non-disclosure and non-competition provisions within the Agreement.  A copy of the Agreement was also provided to Vista at that time.

78.     Nonetheless, despite this information and warning, Vista continued to employ Burton, and later Hedrick, in the development of Numero.  In October 2014, Burton and Hedrick became directors of Numero, which had just been publically launched.

79.     As a result of Vista's aid and encouragement, Burton and Hedrick did in fact breach their contractual obligations to Rentrak by stealing, misusing and disclosing confidential information and trade secrets, soliciting Rentrak employees and customers, and seeking to directly compete with Rentrak.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(against Defendant Burton)**

80.     The allegations contained in paragraphs 1 through 79 are incorporated by reference herein.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

81.     Defendant Burton was employed by Rentrak and entered into one or more employment agreements with Rentrak.

82.     As part of his employment agreement, Defendant Burton agreed to Rentrak's Employee Confidentiality and Noncompetition Agreement ("the Agreement").

83.     Defendant Burton further acknowledged receipt of, and agreed to abide by, Rentrak's Employee Handbook, which specifically references the Agreement.

84.     Defendant Burton also agreed to abide by Rentrak's Code of Business Conduct ("Rentrak Code of Conduct").

85.     Defendant Burton's employment agreement(s), the Agreement, agreement to abide by Rentrak's Employee Handbook, and agreement to abide by the Rentrak Code of Conduct were supported by adequate consideration, including, but not limited to, Rentrak's agreement to employ Burton and promotions, salary raises, and bonuses that were given to Burton.

86.     Defendant Burton came to possess Rentrak's confidential information as part of his employment with Rentrak, including, but not limited to, Rentrak's confidential and proprietary data file specifications, *e.g.* the "eGro"/"Ebor" specification.

87.     Defendant Burton has breached the Agreement and the Rentrak Code of Conduct by stealing, disclosing, and continuing to use Rentrak's confidential and proprietary information, including, but not limited to, Rentrak's confidential and proprietary data file specifications.

88.     Defendant Burton has further breached the Agreement and the Rentrak Code of Conduct by forming and operating a competing business, currently operating as Numero, which is the same or substantially similar to one or more box office reporting businesses operated by Rentrak.

89.     Defendant Burton has additionally breached the Agreement and the Rentrak Code of Conduct by soliciting entities that were customers of Rentrak or its affiliates at the time of his termination, and by soliciting employees of Rentrak to join him in his new venture.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

90.     As a result of Defendant Burton's breaches of his contractual obligations under the Agreement and the Rentrak Code of Conduct, Rentrak has suffered irreparable harm and damages.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(against Defendant Hedrick)**

91.     The allegations contained in paragraphs 1 through 90 are incorporated by reference herein.

92.     Defendant Hedrick was employed by Rentrak and entered into one or more employment agreements with Rentrak.

93.     As part of his employment, Defendant Hedrick agreed to Nielsen's Employee Confidentiality and Proprietary Rights Agreement ("the Hedrick Agreement").

94.     Defendant Hedrick also agreed to abide by Rentrak's Code of Business Conduct ("Rentrak Code of Conduct").

95.     Defendant Hedrick's employment agreement(s), the Hedrick Agreement, and agreement to abide by the Rentrak Code of Conduct were supported by adequate consideration, including, but not limited to, Rentrak's agreement to employ Hedrick and promotions, salary raises, and bonuses that were given to Hedrick.

96.     Defendant Hedrick came to possess Rentrak's confidential information as part of his employment with Rentrak.

97.     Defendant Hedrick has breached the Hedrick Agreement and the Rentrak Code of Conduct by stealing, disclosing, and continuing to use Rentrak's confidential and proprietary information, including, but not limited to, Rentrak's confidential and proprietary data file specifications.

22-  COMPLAINT FOR DAMAGES AND INJUNCTIVE
     RELIEF AND DEMAND FOR JURY TRIAL

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

98.     Defendant Hedrick has further breached the Rentrak Code of Conduct by forming a competing business, Numero, which is the same or substantially similar to one or more box office reporting businesses operated by Rentrak, while still employed by Rentrak.

99.     Defendant Hedrick has additionally breached the Hedrick Agreement and the Rentrak Code of Conduct by interfering with the relationship between Rentrak and its customers and employees by soliciting entities that were customers of Rentrak or its affiliates at the time of his termination, and by soliciting employees of Rentrak to join him in his new venture.

100.    As a result of Defendant Hedrick's breaches of his contractual obligations under the Hedrick Agreement and Rentrak Code of Conduct, Rentrak has suffered irreparable harm and damages.

**THIRD CAUSE OF ACTION**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Oregon Uniform Trade Secrets Act, ORS 646.461 - 646.475)**
**(against All Defendants)**

101.    The allegations contained in paragraphs 1 through 100 are incorporated by reference herein.

102.    During their employment with Rentrak, Defendants Burton and Hedrick had access to and possessed Rentrak's confidential and proprietary information, including, but not limited to, Rentrak's confidential and proprietary data file specifications, *e.g.* the "eGro"/"Ebor" specification and Rentrak's confidential pricing information, which derives independent economic value from not being generally known to, or not readily ascertainable through proper means by the public or other persons who can obtain economic value from its disclosure or use.

103.    Rentrak takes significant steps and efforts to maintain the confidentiality of its confidential and proprietary information, including, but not limited to, requiring its employees to agree not to disclose confidential information, stamping documents with confidentiality designations, maintaining confidential documents, including its data file specifications on a

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

password-protected drive, and providing its Box Office Essentials and International Box Office Essentials systems to exhibitors only pursuant to non-disclosure agreements.

104.    Defendants have engaged in trade secret misappropriation by stealing, using, and/or disclosing Rentrak's confidential and proprietary information, including, but not limited to, Rentrak's confidential and proprietary data file specifications, *e.g.* the "eGro"/"Ebor" specification, and by stealing, using, and disclosing Rentrak's confidential pricing information.

105.    This ongoing theft, use, and/or disclosure of Rentrak's trade secrets constitutes misappropriation of trade secrets in violation of Oregon Revised Statutes 646.461, *et seq.*

106.    Defendants knew or had reason to know that Rentrak's confidential and proprietary trade secret information was stolen and acquired by improper means.

107.    Defendants have willfully, knowingly, and maliciously stolen and misappropriated these trade secrets.

108.    Rentrak has suffered irreparable harm and damages as a result of Defendants' violations of Oregon Revised Statutes 646.461, *et seq.*

109.    Unless enjoined by this Court, Defendants' actual and threatened misappropriation of Rentrak's trade secrets will cause Rentrak to suffer irreparable harm.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS**
**(against Defendants Vista and Numero)**

110.    The allegations contained in paragraphs 1 through 109 are incorporated by reference herein.

111.    Burton and Hedrick had a professional and business relationship with Rentrak by virtue of their employment relationships with Rentrak and various contracts they entered into with Rentrak, including, but not limited to, the Agreement.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

112.    Defendants Vista Entertainment Solutions and Numero knew or should have known about the relationships between Rentrak and Burton and between Rentrak and Hedrick, including, but not limited to, the obligations of Burton under the Agreement.

113.    Defendants Vista and Numero are third-parties to the relationships between Rentrak and Burton and between Rentrak and Hedrick.

114.    Defendant Vista intentionally interfered with the relationships between Rentrak and Burton and between Rentrak and Hedrick, including, but not limited to, by soliciting Burton and Hedrick to terminate their employment with Rentrak.

115.    On information and belief, Defendants Vista and Numero intentionally interfered with the relationships between Rentrak and Burton and between Rentrak and Hedrick for one or more improper purposes and by one or more improper means, including, but not limited to, inducing Burton and Hedrick to form and operate a venture that directly competes with Rentrak in violation of Burton and Hedrick's contractual obligations, and inducing Burton and Hedrick to improperly disclose and use Rentrak's confidential, proprietary, and trade secret information.

116.    As a proximate result of Vista's intentional interference with Rentrak's business and contractual relationships, Rentrak has suffered irreparable harm to its goodwill, reputation, and business and will continue to suffer such harm unless and until Defendants are enjoined. Rentrak is also entitled to recover its actual damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS**
**(against Defendant Hedrick)**

117.    The allegations contained in paragraphs 1 through 116 are incorporated by reference herein.

118.    Burton had a professional and business relationship with Rentrak by virtue of his employment relationships with Rentrak and various contracts he entered into with Rentrak, including, but not limited to, the Agreement.

25- COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF AND DEMAND FOR JURY TRIAL

74182.0023/LEGAL125256289.6

119.    Defendant Hedrick knew or should have known about the relationships between Rentrak and Burton, including, but not limited to, the obligations of Burton under the Agreement and the Rentrak Code of Conduct.

120.    Defendant Hedrick is a third-party to the relationship between Rentrak and Burton.

121.    Defendant Hedrick intentionally interfered with the relationships between Rentrak and Burton, including, but not limited to, by soliciting and encouraging Burton to terminate his employment with Rentrak.

122.    On information and belief, Defendant Hedrick intentionally interfered with the relationship between Rentrak and Burton for one or more improper purposes and by one or more improper means, including inducing Burton to form and operate a venture that directly competes with Rentrak in violation of Burton's contractual obligations, and inducing Burton to improperly disclose and use Rentrak's confidential, proprietary, and trade secret information.

123.    As a proximate result of Hedrick's intentional interference with Rentrak's business and contractual relationships, Rentrak has suffered irreparable harm to its goodwill, reputation, and business and will continue to suffer such harm unless and until Defendants are enjoined.  Rentrak is also entitled to recover its actual damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS
### (against All Defendants)

124.    The allegations contained in paragraphs 1 through 123 are incorporated by reference herein.

125.    Plaintiff Rentrak had and/or has business relationships with various exhibitors and subscribers, including, but not limited to, Village Roadshow Ltd., by virtue of contracts and ongoing business expectancies between Rentrak and the exhibitors and subscribers.

126.    Defendants knew of the relationship with various exhibitors and subscribers, including, but not limited to, Rentrak's relationship with Village Roadshow Ltd.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

127. Defendants are third-parties to the relationship between Rentrak and the exhibitors and subscribers, including, but not limited to, Village Roadshow Ltd.

128. On information and belief, Defendants have intentionally interfered for an improper purpose with Rentrak's business relationships.

129. Defendants have intentionally interfered with Rentrak's business relationships by using improper means, including, but not limited to, forming and operating a competing venture in violation of Burton and Hedrick's obligations under the Agreement and improperly utilizing Rentrak's confidential, proprietary, and trade secret information.

130. In addition, Defendants Burton and Hedrick have intentionally interfered with Rentrak's contractual relationships by using improper means, violating the terms of the Agreement, and soliciting other Rentrak employees to also violate their employment contracts with Vista to join them at Numero.

131. As a proximate result of Defendants' intentional interference with Rentrak's business and contractual relationships, Rentrak has suffered irreparable harm to its goodwill, reputation, and business and will continue to suffer such harm unless and until Defendants are enjoined. Rentrak is also entitled to recover its actual damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY AND THE COMMON LAW DUTY OF LOYALTY**
**(against Defendants Burton and Hedrick)**

132. The allegations contained in paragraphs 1 through 131 are incorporated by reference herein.

133. As a result of Defendants Burton and Hedrick's employment relationship with Rentrak, knowledge of Rentrak's expectation of loyalty, and agreements to abide by the Employee Handbook, the Rentrak Code of Conduct and the other agreements, Burton and Hedrick owed Rentrak a duty of loyalty during their employment.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

134.    Upon information and belief, while still employed by Rentrak Defendants Burton and Hedrick initiated formation of a competing company  solicited one or more Rentrak subscribers to cancel their contracts with Rentrak, and, on information and belief, utilized Rentrak's confidential, proprietary, and trade secret information to form a competing venture. These actions constituted a breach of their duty of loyalty to Rentrak.

135.    As a result of Defendants Burton and Hedrick's breach of fiduciary duty and common law duty of loyalty, Rentrak has suffered irreparable harm and damages.

**EIGHTH CAUSE OF ACTION**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(against Defendants Burton and Hedrick)**

136.    The allegations contained in paragraphs 1 through 135 are incorporated by reference herein.

137.    Burton and Hedrick's employment agreements with Rentrak and agreements to abide by the Employee Handbook, the Rentrak Code of Conduct and/or the Agreement, established an implied duty of good faith and fair dealing.  This duty obligated Defendants Burton and Hedrick to cooperate with Rentrak so that each party could obtain the full benefit of the performance of their contracts.

138.    Defendants Burton and Hedrick's actions have exhibited numerous instances of bad faith and unfair dealing.

139.    Defendants Burton and Hedrick have exhibited bad faith by initiating formation of their own company to compete with Rentrak while still employed by Rentrak, soliciting one or more Rentrak subscribers to cancel their contracts with Rentrak and form a competing business, and, on information and belief, utilizing Rentrak's confidential, proprietary, and trade secret information to form and operate a competing venture.

140.    As a breach of Defendants Burton and Hedrick's breach of duty of good faith and fair dealing, Rentrak has suffered irreparable harm and damages.

28-  COMPLAINT FOR DAMAGES AND INJUNCTIVE
     RELIEF AND DEMAND FOR JURY TRIAL

74182.0023/LEGAL125256289.6

## NINTH CAUSE OF ACTION
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
### (against Defendant Burton)

141.    The allegations contained in paragraphs 1 through 140 are incorporated by reference herein.

142.    The computers and servers used by Rentrak are involved in interstate commerce and communication, and are "protected computers" under 18 U.S.C. § 1030 (e)(2).

143.    Defendant Burton knowingly and intentionally accessed a computer provided to him by Rentrak, as well as Rentrak's email servers and cloud backup, to obtain information and remove files to one or more external drives, as well as to delete files without authorization, after he had decided to resign from Rentrak to form a competing company, then called "Vi-Box."

144.    Through unauthorized use and access of Rentrak's computers and/or servers, Burton has obtained and used valuable information in violation of 18 U.S.C. § 1030(a)(2).

145.    Defendant Burton knowingly, willfully, and with intent to harm Rentrak and keep his clandestine activities secret, without authorization used and deleted Rentrak's computer files and obtained valuable information, which Burton improperly used to harm Rentrak in violation of 18 U.S.C. § 1030(a)(4).

146.    Defendant Burton's course of conduct has resulted in substantial damages of at least $5,000 to Rentrak, including the use of confidential and proprietary information as a direct and proximate result of Burton's actions.

## TENTH CAUSE OF ACTION
## VIOLATION OF STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701, *et seq.*
### (against Defendant Burton)

147.    The allegations contained in paragraphs 1 through 146 are incorporated by reference herein.

148.    As a result of Defendant Burton's conduct described herein, Defendant Burton violated the provisions of the Stored Communications Act by intentionally, willfully, and

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

without permission accessing and deleting files stored at facilities through which Rentrak maintains its electronic communications, including email accounts.

149.    On information and belief, the files that Burton accessed, provided to others, and/or deleted contained confidential information that was not readily accessible to the general public.

150.    Defendant Burton knowingly and intentionally exceeded authorized access to Rentrak's confidential electronic communications that were stored on Rentrak's computer servers.

151.    Defendant Burton obtained access to Rentrak's confidential electronic communications while they were in electronic storage and thereafter used, disclosed, and deleted the electronic communications to, among other things, form a competing business and cause damage to Rentrak.

152.    Rentrak has suffered damages, including lost proprietary information and confidential electronic communications, as a result of Burton's unlawful conduct.

## PRAYER FOR RELIEF

Plaintiff Rentrak, accordingly, prays for the following relief:

1.    Preliminary injunctive relief, including, but not limited to:

    (i)    An order restricting Defendants from using or disclosing any Rentrak confidential information;

    (ii)    An order restricting Defendants Burton and Hedrick from working at Numero or any other venture that competes with Rentrak during the pendency of this action;

2.    Permanent injunctive relief, including, but not limited to:

    (i)    An order prohibiting Defendants from soliciting any of Rentrak's customers, clients, employees, or contractors, and prohibiting

30-  COMPLAINT FOR DAMAGES AND INJUNCTIVE
     RELIEF AND DEMAND FOR JURY TRIAL

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Defendants from using or disclosing Rentrak's Confidential Information.

(ii)     An order prohibiting Defendants Burton and Hedrick from operating or participating in a business that is the same or substantially similar to a business operated by Rentrak at the time of their respective departure(s) for a reasonable period of time after the entry of the injunction;

3.     Judgment against Defendants for all actual, consequential, and punitive damages in an amount in excess of $75,000, as may be provided by law;

4.     Judgment against Defendant for their unjust enrichment in excess of $75,000, as may be provided by law;

5.     For contractual and statutory attorney's fees and costs;

6.     For pre-judgment interest on liquidated sums;

7.     For post-judgment interest on any money judgment until paid in full; and

8.     For any other and further relief as the court may deem just and equitable.

///

///

///

///

///

///

///

///

///

///

31-  COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

74182.0023/LEGAL125256289.6

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**Jury Demand**

Rentrak hereby demands trial by jury of all issues so triable under the law.

DATED:  March 19, 2015

s/ Thomas R. Johnson
_____
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta S. Brenner, OSB No. 142844
Abrenner@perkinscoie.com
Daniel Keese, OSB No. 140989
DKeese@perkinscoie.com
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiff
Rentrak Corporation

32-  COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF AND DEMAND FOR JURY TRIAL

74182.0023/LEGAL125256289.6